## SOUTHERN DEPARTMENT—EASTERN DIVISION. MARCH TERM, 1895.

*In the matter of the Application of* L. A. PETRIE, *for a Writ of Habeas Corpus*.

1. COMMITTING WITNESS—*Recognizance—Valid Statute.* Section 61 of chapter 82, General Statutes of 1889, by which an examining magistrate is authorized to commit to prison a witness who refuses to enter into a recognizance, with or without sureties, for his appearance as a witness, is not unconstitutional, as being in violation of the fifth article of the amendment to the constitution of the United States.

2. STATUTE—*Its Nature and Object.* Section 61, chapter 82, General Statutes of 1889, only subjects witnesses in criminal cases to the same general rules which govern every other citizen of the state, and is such an execution of the power of the state as the settled maxims of the law sanction and require for the protection of society and good government; and the requirement of this statute is simply to secure the presence of persons who are material witnesses for the public in the trial of those charged with offenses against the laws of the state. The same burden is imposed upon every citizen of the state alike who may happen to possess the information which is necessary to protect society against criminals, and to vindicate the majesty of the law.

3. MATERIAL WITNESS—*Duty of Examining Magistrate.* When a person voluntarily makes complaint before a justice of the peace or other examining magistrate, and causes the party to be arrested on charge of a felony, and the party waives his right to an examination, and is admitted to bail or committed to jail to answer the charge contained in the complaint, it is the duty of the justice or examining magistrate to require all the material witnesses for the state to enter into recognizances for their appearance at the next term of the court to which the party is required to answer, and it is not necessary that he hear evidence as to the complaining witness. Being a material witness for the state, he may require him to enter into a recognizance, and, if he has reason to believe that he will not perform the conditions of

his recognizance, may require him to enter into a recognizance, with sureties, and, if he refuses to enter into such recognizance, may commit him to jail until he comply with such order.

MEMORANDUM.— Original application by L. A. Petrie for a writ of *habeas corpus*. Denied. Opinion filed March 19, 1895.

The statement of the case, as made by JOHNSON, P. J., is as follows :

L. A. Petrie petitioned for a writ of *habeas corpus* as follows :

"Now comes your petitioner, L. A. Petrie, and avers that he is a resident of Miami county, Kansas, and has been such resident for 39 years last past ; that your petitioner is now illegally restrained of his liberty and imprisoned by T. J. Allen, sheriff of Bourbon county, Kansas, in the common jail of said county ; that your petitioner has been so restrained of his liberty since the 31st day of January, 1895 ; that the illegality of said imprisonment is in this, to wit : That your petitioner was required by B. C. Garrison, J. P., to enter into a recognizance, with approved securities, in the sum of $300, to appear as a witness at the next term of the district court for Bourbon county, Kansas, in a case there pending, wherein the state of Kansas is plaintiff and Mart. Tooney is defendant ; that your petitioner has not refused to give said recognizance, but has used his best endeavors to secure sureties that are satisfactory to said justice of the peace ; that said justice has no cause to believe that your petitioner would not appear in obedience to the commands of said court, and in satisfaction of his own personal recognizance. Your petitioner further represents and avers that he will attend the next term of the district court of Bourbon county, Kansas, and that he will not depart the jurisdiction of said court without leave thereof. Your petitioner further represents that he has never had an opportunity to be heard upon the matters and things herein set out, and that

*In re* Petrie, *Petitioner.*

he is being deprived of his liberty without due process of law.

"Wherefore, your petitioner prays that a writ of *habeas corpus* issue from the court, and that the matters and things herein contained be inquired of by the court, and that, upon said inquiry being had and determined, your petitioner be discharged from confinement upon his own personal recognizance in such sum as the court may adjudge, and for such other and further relief as your petitioner ought to have."

The petition was duly sworn to by the petitioner, and presented in open court, and the writ was granted by the court as prayed for. The sheriff made due return as follows:

"1. I am the regularly-elected, qualified and acting sheriff of Bourbon county, Kansas, and *ex officio* keeper of the county jail of said county.

"2. B. C. Garrison, Esq., herein named, was at the dates hereinafter mentioned one of the regularly-elected, qualified and acting justices of the peace in and for the city of Fort Scott, said county and state.

"3. I admit that I am imprisoning and restraining said L. A. Petrie, and keeping him confined in the county jail of said county.

"4. I also admit that on January 31, 1895, he was committed to the county jail by said justice, B. C. Garrison. A copy of the writ of commitment is hereto attached, marked 'Exhibit A,' and made a part hereof.

"5. On said date, one Mart. Tooney was examined before said justice on a charge of robbery, said L. A. Petrie being the complaining witness, and said Tooney was placed under bonds to appear for trial on said charge of robbery at the next term of the district court of said county and state, and, failing to give such bond, was also committed to the county jail, and is now in confinement in my charge.

"6. The justice then deemed said L. A. Petrie a material witness in the action against Mart. Tooney on the aforesaid charge; and said justice was then satisfied that there was a good cause to believe that

said L. A. Petrie would not perform the condition of any recognizance given by him unless required to give security.

"7. Because of the premises, said justice required said L. A. Petrie to furnish a recognizance, with approved security, in the sum of $300, with which order said Petrie failed to comply, and because of the fact he was committed, as above set out.

"8. And, because of the matters and things hereinbefore set out, I allege that the said L. A. Petrie is rightfully and lawfully being restrained of his liberty by me."

"EXHIBIT A.

"The state of Kansas, to J. R. Smith, constable in and for the county aforesaid, and to the keeper of the jail of the county aforesaid, greeting : Whereas, Mart. Tooney, late of said county, has been arrested on the oath of L. A. Petrie, charged with the crime of robbery ; and, whereas, said L. A. Petrie has been required to enter a recognizance in the sum of $300 to appear and testify in that behalf at the first day of the April court, 1895, of Bourbon county district court, and has been examined by me, with which requisition he has failed to comply : Wherefore, you, the said constable, are hereby commanded to take the body of him, the said —————, and deliver him to the keeper of the county jail of your county ; and you, the said keeper of the said jail, are hereby commanded to receive the said L. A. Petrie into your custody in the jail of the county aforesaid, there to remain until he be discharged by due course of law."

The parties agree on the following facts :

"(1) The statements in clause 6 of the sheriff's answer are true. (2) The justice's docket, as it relates to the commitment of said Petrie, is considered in evidence. (3) It is further agreed that the only questions involved herein are whether or not the statute under which the commitment was made is constitutional, and whether or not the provisions of the statute have been complied with."

The justice's docket that relates to the commitment of L. A. Petrie is as follows :

"January 31, 1895, personally appeared L. A. Petrie, and filed complaint, under oath, charging that on or about January 30, 1895, in the county of Bourbon, state of Kansas, one Mart. Tooney did willfully, unlawfully and feloniously take from the person of affiant, and against affiant's will, and by violence of the person of affiant, certain money of affiant, to wit, one five-dollar treasury note and one two-dollar treasury note, currency of the United States, said money being the property of affiant, contrary to the form of statutes in such cases made and provided, and against the peace and dignity of the state of Kansas. January 31, 1895, warrant delivered to J. R. Smith, constable. Warrant filed January 31, 1895, indorsed : 'Received this writ January 31, 1895. Served the same by arresting the within-named defendant, and producing his body into court.—J. R. Smith, *Constable.*' January 31, 1895, the defendant being present in person, the county attorney, C. E. Cory, appeared for the state, and thereupon the defendant waived a preliminary examination, and was bound over to the district court of Bourbon county, Kansas. Bond fixed at $300. Not given. A commitment delivered to J. R. Smith, constable. Commitment filed January 31, 1895, indorsed : 'Received this writ January 31, 1895. Executed the same by committing the within-named Mart. Tooney to the jail of Bourbon county, Kansas, and by delivering a certified copy of this order to the jailer thereof.— J. R. Smith, *Constable.*' The complaining witness, L. A. Petrie, was required to give bond in the sum of $300 to appear and testify in behalf of the state at the first day of the April term, 1895, of the Bourbon county, Kansas, district court. Bond not given, and thereupon a commitment was issued for said L. A. Petrie, and delivered to J. R. Smith, constable. Commitment filed January 31, 1895, indorsed : 'Received this writ January 31, 1895. Executed the same January 31, 1895, by committing the within-named L. A. Petrie to the jail

of Bourbon county, Kansas, and delivered a certified copy of this order to the jailer thereof.' ''

*N. W. Wells*, for petitioner.

*C. E. Cory*, county attorney, for T. J. Allen, sheriff.

The opinion of the court was delivered by

JOHNSON, P. J.: There are only two questions in this case presented by the agreed facts for the consideration of the court. The first reason urged by the counsel for the release of the petitioner is that section 61, chapter 82, of the General Statutes of 1889, is unconstitutional. The claim is that this section violates his rights under that portion of the fifth article of the amendment to the constitution of the United States, which reads as follows: ''Nor be deprived of life, liberty, or property, without due process of law.'' The contention is that under this statute the petitioner is deprived of his liberty without due process of law. The statute under which the petitioner is imprisoned is found in the fifth article of the code of criminal procedure, for the arrest and examination of offenders, which provides, upon complaint made by any magistrate authorized to examine into criminal offenses, that he shall examine, on oath, the complainant and any other witness produced by him, and shall reduce the complaint to writing, and if it shall appear that an offense has been committed, shall issue a warrant naming the offense charged to have been committed and the county in which it was committed, and requiring the officer to whom it is directed forthwith to take the person accused and bring him before some court or magistrate of the county to be dealt with according to law; also gives the form of the warrant and prescribes the manner of the examination of the

party accused of an offense, and if, on the examination, it shall appear that an offense has been committed and there is probable cause to believe the prisoner guilty, and if the offense be bailable by the magistrate, and the prisoner offer sufficient bail, it shall be taken and the prisoner discharged; but if not sufficient bail be offered or the offense be not bailable by the magistrate, the prisoner shall be committed for trial. When the prisoner is admitted to bail or committed by the magistrate, he shall also bind by recognizance such witness against the prisoner as he shall deem material to appear and testify at the next term of the court having cognizance of the offense, and in which the prisoner shall be held to answer. Section 58 provides:

" If the magistrate shall be satisfied that there is good cause to believe that any such witness will not perform the condition of his recognizance, unless other security be given, such magistrate may order the witness to enter into a recognizance, with such sureties as may be deemed necessary, for his appearance at court.''

The magistrate shall in like manner, at the defendant's request, cause the material witness for the defendant to enter into a recognizance for appearing and testifying in the court, having cognizance of the offense. All witnesses required to recognize, either with or without sureties, shall, if they refuse, be committed to prison by the magistrate, there to remain until they comply with such order or be otherwise discharged according to law.

Counsel for petitioner claims that, under these several provisions of the statute, he is deprived of his liberty without due process of law. This brings us to the consideration of the constitutionality of these sections, and to determine what is meant by due proc-

ess of law.   Mr. Justice VALENTINE, in delivering the
opinion of the court in the case of *Gilchrist v. Schmid-
ling*, 12 Kas. 271, says:

"The able disquisitions found in many decisions
and elementary works upon 'due process of law,'
'due course of law,' 'law of the land,' etc., can have
but little application in Kansas, for our constitutional
provision upon that subject differs from that of almost
every other state in the union.   It reads as follows:
'All persons for injuries suffered in person, reputa-
tion or property shall have remedy by due course of
law, and justice administered without delay.' (Const.
Bill of Rights, § 18.)   We suppose that it is settled,
beyond all controversy, that 'due process of law,' etc.,
for transferring property from one person to another,
before any injury has been suffered by the owner of
the property, does not necessarily mean a judicial
proceeding or a judicial determination.   The dis-
training of cattle *damage-feasant*, the taking up of
strays, the sale of property, real or personal, for
taxes, the exercise of the power of eminent domain,
the passage of remedial and retrospective statutes,
legalizing what had previously been defectively ex-
ecuted or performed, and thereby changing title to
property, (52 Pa. St. 479, 480, 481; Cooley, Const.
Lim. 371,) or the exercise of many police powers by
the police officers of a city, is as much 'due process
of law' as any judicial determination can be; and yet
they are not, as a rule, judicial proceedings.   Nor
does 'due process of law' mean 'a legal proceeding
according to the course of the common law; nor must
there be a personal notice to the party whose property
is in question.'"

Judge Cooley, in his work on Constitutional Limita-
tions (p. 353), in giving the definition to "due proc-
ess of law," says:

"What then is meant by 'due process of law' and
the 'law of the land' in the several constitutional
provisions which we have referred to, as they are ap-

*In re* Petrie, *Petitioner.*

plied to the protection of rights in property, and in what cases can legislative action be annulled as not being the 'law of the land,' or judicial or ministerial action set aside as not being 'due process of law' in the constitutional sense? These definitions and these terms to be found in the reported cases are so varied that some difficulty arises in fixing upon one which shall be accurate and complete in itself, and at the time applicable in all cases. The diversity of definition is not surprising, when we consider the diversity of cases in which it has been attempted, and reflect that the definition which is sufficient for one case and applicable to its facts may be altogether insufficient or entirely inapplicable in another.''

No definition is more often quoted than that of Mr. Webster, in the *Dartmouth College Case*, 4 Wheat. 519 :

'' By the law of the land is most clearly intended the general law ; a law which hears before it condemns ; which proceeds upon inquiry, and renders judgment only after trial. The meaning is, that every citizen shall hold his life, liberty, property and immunities under the protection of the general rules which govern society. Everything which may pass under the form of an enactment is not, therefore, to be considered the law of the land.''

These definitions are correctly used when applied to judicial proceedings which usually terminate in a judgment whereby the property of one citizen is transferred to some other individual, or where the individual is deprived of his personal liberty as a punishment for some crime, but are not applicable to matters in which the public requires the property for some legitimate purpose for the state, or where the public requires the service of the citizen. Where private rights and interests must yield to the demands of the public and for the good of society — there are many cases in which the individual citizen must yield his personal ,liberty for the preservation of the

public peace, the protection of society, and defense of the government against rebellion or insurrection — all citizens must respond to the call of the sheriff or other police officers for the apprehension of felons, to pursue fugitives from justice, and must obey the summons of the proper officers to appear as jurors or witnesses. Temporary deprivation of liberty must often take place through the action of ministerial or executive officers or functionaries. For instance, a notary public, in taking depositions, may commit a refractory witness. Any court may attach one who fails to obey a subpœna, or imprison one in contempt of court. Mr. Justice Miller, in delivering the opinion of the court in the case of *Davidson v. New Orleans,* 96 U. S. 102, says:

"A most exhaustive judicial inquiry into the meaning of the words 'due process of law' as found in the fifth amendment, resulted in the unanimous decision of this court that they do not necessarily imply a regular proceeding in a court of justice, or after the manner of such courts."

*In re Ebenhack, Petitioner,* 17 Kas. 620: This was a proceeding in *habeas corpus* for the discharge of the petitioner, who was imprisoned in the jail of Greenwood county, Kansas, for failure to pay costs taxed against him in a case where he was the complaining witness in a prosecution before a justice of the peace for a misdemeanor, and on trial the defendant was acquitted, and the prosecutor adjudged to pay the costs or give bond for the same and stand committed until they were paid or bond given, and on his refusal to comply with the order of the justice was committed to jail. It was claimed that section 18, chapter 81 of the General Statutes of 1868, was unconstitutional, and that his imprisonment was without due process of

13—APP.

*In re* Petrie, *Petitioner.*

law.   BREWER, J., delivering the opinion of the court, says :

"We do not consider the objection well taken.   By coming into court and filing his complaint, he submits himself to the jurisdiction of the justice, and at the same time that the question of the guilt of the person, by his affidavit charged with crime, is tried, his own conduct in the premises is inquired into. True, he is not upon the record as a party plaintiff or defendant, but the prosecution is instituted at his instance, and he appears upon the record as complaining party."

In the case of *Weimer v. Bunbury*, 30 Mich. 210, in which the constitutionality of certain revenue laws of Michigan was under consideration, the court held that due process of law is not necessarily judicial process, and that much of the process by means of which the government is carried on and the order of society maintained is purely executive or administrative, which is as much due process of law as is judicial process.

After a thorough examination of the decisions of the various courts of this country, we are of the opinion that § 61, chapter 82, General Statutes of 1889, is not unconstitutional; that it only subjects witnesses for the state in criminal cases to the same general rules which govern every other citizen of the state as the settled maxims of the law sanction and require for the protection of society and good government; and the requirements of this statute are simply to secure the presence of persons who are material witnesses for the public in the trial of those charged with offenses against the laws of the state.   The same burden is imposed upon every citizen of the state alike who may happen to possess the information which is necessary to protect society against the criminal and to vindicate the majesty of the law.

Having decided that the section of the statute under which the petitioner is confined is constitutional, we next proceed to consider the second reason urged for his release : Were the forms of the statute complied with?   It is agreed and shown by the record that the petitioner made complaint before B. C. Garrison, a justice of the peace for Fort Scott, Bourbon county, Kansas, charging one Mart. Tooney with the crime of robbery in that county ; that the complaint was reduced to writing, signed and sworn to by the petitioner ; that a warrant was duly issued thereon by the justice of the peace, and Mart. Tooney arrested and brought before him for examination ; that he waived examination, and the justice thereupon required him to enter into a recognizance in the sum of $300, with sureties, for his appearance at the next term of the district court of Bourbon county, Kansas, to answer the charge contained in said complaint ; that said Mart. Tooney failed to give such recognizance and was committed to the jail of said county to answer said charge at the next term of the court. Thereupon, the magistrate required the petitioner to enter into a recognizance in the sum of $300 to appear at the next term of the district court of Bourbon county, as a witness of the state in said case, and the magistrate being satisfied that the petitioner would not perform the conditions of said recognizance, unless such security be given, the magistrate ordered that he enter into recognizance, with sureties, in the sum of $300 for his appearance at the next term of the district court of said county, and said witness, neglecting and refusing to recognize with sureties as required by said magistrate, was thereupon committed to jail until he complied with such order.

The contention of counsel is that, because the per-

son charged with the crime waived his right to an examination, there was no evidence showing that petitioner was a material witness for the state, and that there could be no judicial determination on the part of the examining magistrate that would authorize him to find that he was a material witness for the state. We think that, when the complainant voluntarily went before the magistrate and made complaint, and it was by the magistrate reduced to writing and subscribed and sworn to by the complainant, these facts furnished the very strongest evidence that he was a material witness for the state, and, if his complaint as sworn to was true, a very material witness; and the magistrate could have no stronger evidence of that fact if an examination had been held. The record and agreed facts show that the petitioner is confined in jail under a statute that is constitutional, and the forms of the statute have been duly observed in the matter.

It is the order of this court that the petitioner be remanded to the jailer of said county until such time as he comply with the order of the court and enter into a recognizance, as required by the examining magistrate, or is otherwise discharged by due course of law.

All the Judges concurring.